## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CONSTELLATION POWER | : | |
| SOURCE, INC. | : | |
| | : | |
| v. | : | No. 3:04cv983 (MRK) |
| | : | |
| | : | |
| SELECT ENERGY, INC. | : | |

### MEMORANDUM OF DECISION

On November 14, 2006, the Court issued an opinion, following a bench trial, on the issue of liability.  *See* Memorandum of Decision [doc. # 137].  In what now appears to have been a fruitless attempt to determine if the parties could in good faith agree upon all remaining issues, the Court gave the parties until December 13, 2006 to file a stipulation or, in the absence of agreement, supplemental briefs on the issue of damages and pre-judgment interest.  Each of the parties have now filed motions for reconsideration of this Court's liability decision and briefs on damages, pre-judgment interest, and costs.  *See* Defendant's Motion for Reconsideration and/or Clarification [doc. # 138]; Plaintiff's Motion for Reconsideration [doc. # 139]; Opposition to Plaintiff's Motion for Reconsideration [doc. # 141]; Select Energy, Inc.'s Supplemental Post-Trial Brief Regarding Damages [doc. # 142]; Plaintiff's Memorandum on Damages [doc. # 143]; Plaintiff's Reply in Support of its Motion for Reconsideration [doc. # 144]; Defendant's Opposition to That Portion of Plaintiff's Memorandum on Damages Related to Expert Fees [doc. # 145]; Plaintiff's Reply in Support of Request for Expert Fees [doc. # 146].  This opinion addresses the reconsideration motions and the issue of damages. The Court assumes familiarity with the facts and its previous Memorandum of Decision.

## Motions for Reconsideration

**1.**     Plaintiff Constellation Power Source, Inc., now known as Constellation Energy Commodities Group, Inc. ("Constellation") moves for reconsideration of a portion of this Court's decision.   In particular, Constellation focuses on the following statement from the Court's Memorandum of Decision:

> There is no dispute that these portions of the Letter Agreement make Constellation responsible for LMP; indeed, Constellation readily acknowledges this, and accordingly, it paid the LMP it was billed by ISO New England during the Post-SMD period.  But this dispute is not about whether Constellation is responsible for LMP absent the proviso.  Rather, the dispute is about whether Constellation should have paid those amounts given Select's position that Select was not obligated to do so under the Select/CL&P Agreement.

Decision [doc. # 137] at 42.  Constellation disputes that it ever acknowledged that it was responsible for the marginal losses portion of the LMP Differential or RMR charges in the Post-SMD period, and thus asks the Court to reconsider its ruling in that respect.  Select Energy, Inc. ("Select") urges the Court to deny the motion for reconsideration on the ground that the Court did not overlook any new facts or law and that, in any event, there is no basis for altering the Court's decision.

The Court agrees with Constellation that it did not acknowledge that it was responsible for the marginal losses portion of the LMP Differential or RMR charges in the Post-SMD period and that the Court's statement to that effect in its decision is in error.  The Court, therefore, grants Constellation's motion for reconsideration and clarifies that Constellation never acknowledged that it was responsible for the marginal losses portion of the LMP Differential or RMR charges in the Post-SMD period.  Having reconsidered these issues in light of the parties' briefing, however, the Court nevertheless adheres to its original decision.   The Court is satisfied that the combination of the Product & ISO-NE Settlement Obligations provision and the Losses provision of the Letter

2

Agreement made Constellation responsible in the Post-SMD Period for the marginal losses portion of the LMP Differential and RMR charges, except to the extent those losses and charges were not paid by Select to CL&P.

**2.**    Select also asks the Court to reconsider a portion of its decision – namely, the Court's ruling that Constellation is entitled to its "pro rata share of the LMP Differential that Select received from CL&P in connection with the settlement of the FERC Proceeding, *plus pre-judgment interest as provided by the parties' agreement*." Decision [doc. # 137] at 52 (emphasis added). According to Select, Constellation is not entitled to prejudgment interest under the parties' agreement because Constellation never claimed that Select owed it a pro rata share of the FERC settlement, never issued an invoice for that precise amount, and never argued in the litigation that it was entitled to that amount. Constellation counters that the parties' agreement provides for pre-judgment interest in the circumstances of this case, and that in any event, it is entitled to pre-judgment interest as a matter of right under New York statutes.

Once again, the Court grants Select's motion to reconsider this issue, since it was not addressed at any length in the parties' initial trial submissions or oral argument to the Court. However, having reconsidered the issue, the Court adheres to its decision that Constellation is entitled to pre-judgment interest.  The Court need not address Constellation's statutory argument because the Court finds that Constellation's demands satisfy the provisions of section 4.2 of the Master Agreement, which provides for interest on "overdue payments."

Select argues that since Constellation never billed it for or sought the precise amount awarded by the Court in its Memorandum of Decision, Select cannot be liable for pre-judgment interest.  The Court finds that argument contrary to the evident purpose of the parties' agreement as

reflected in the language chosen by the parties.  At all times material to this case, Constellation made it clear to Select from demand letters and claims in this lawsuit that Select owed Constellation sums attributable to the LMP Differential, including the amounts that Select received from CL&P in the FERC Proceeding.   It is true that Constellation sought from Select a much greater sum than the Court ultimately awarded Constellation, but that is no reason to preclude Constellation from recovering pre-judgment interest on the amounts the Court did award Constellation.  If Select's argument regarding the Master Agreement were accepted, then unless a court awarded a party the exact amount sought by the party, that party could never obtain pre-judgment interest, even though that party was wrongfully deprived of amounts due it under the parties' agreement.  The Court sees no good reason in either the language of the agreements or the evidence to construe the parties' agreement in such a bizarre and counter-intuitive fashion.  The evident purpose of the interest portion of the Master Agreement is to allow a party that is due amounts under the parties' agreements to recover interest on the amounts withheld from it and to deprive the party that has withheld those funds from retaining interest earned on the amounts wrongly withheld.  Because the Court has now ruled that Select breached the parties' agreement in failing to pay Constellation a portion of the amount Select received from CL&P as a result of the FERC Proceeding, Constellation is entitled to recover pre-judgment interest in accordance with the parties' agreement on the amount awarded, just as Select is entitled to receive pre-judgment interest on the amounts the Court awarded it.

### Damages and Interest

As intimated in the opening paragraph of this decision, the parties do not agree on any aspect of the calculation of damages and interest and insist that the Court make each of those determinations.

4

1.      **Select's Pre-SMD Award**      In its Memorandum of Decision, the Court awarded Select congestion charges in the Pre-SMD period.  In closing arguments before the Court on September 28, 2006, the parties reported that they had agreed to compromise on the amount of pre-SMD congestion charges due Select and represented to the Court that the amount that the parties had agreed to for congestion charges was  $ 2,378,534.61.  Mr. Robertson, counsel for Select,  reported to the Court that it was his understanding that there had been a $6,000 difference of opinion between the two parties, and that counsel decided to split the difference to $3,000.  He then represented to the Court that the Select agreed on the underlying amount of $2,378,534.61.  Mr. Douglass, counsel for Constellation, also represented to the Court that Constellation agreed with Select on the principal amount.

In its post-trial memorandum on damages, however, Select now states that there is no agreement on the amount owed because Constellation would not agree with Select's interest calculation.  However, it was clear at closing argument that Constellation and Select had not reached agreement on interest, and at no point did Mr. Robertson or anyone else from Select inform the Court that the parties' agreement on congestion charges was contingent or conditional on an agreement on interest.  The Court takes seriously representations of counsel and therefore believes that it is appropriate to adhere to the agreement previously reported to the Court.  The Court awards Select the principal sum of $2,378,534.61 in pre-SMD congestion charges.

For the calculation of pre-judgment interest, the Court utilizes the parties' Master Agreement. *See, e.g., Trans Atlantic Airlines, Inc. v. Kambi Travel, Int'l*, No. 05 Civ. 2552(RLE), 2006 WL 1317024, at *2 (S.D.N.Y. May 12, 2006) ("Interest is calculated at the New York State statutory rate of nine percent per annum unless the agreement . . . provides a different rate.").  Section 4.2 of the

5

Master Agreement provides that overdue payments "accrue interest at the Interest Rate from, and including, the due date to, but excluding, the date of payment." PX 2, § 4.2.  "Interest Rate" means "for any date . . . two (2) percent over the per annum rate of interest equal to the prime lending rate as may from time to time be published in *The Wall Street Journal* under 'Money Rates' . . . ." *Id.*, § 1.1.  Constellation has set forth in an exhibit to its damages brief (Exhibit G) the prime lending rate in effect on the due date of the first unpaid invoice and all later changes in the rate as reported by the *Wall Street Journal* (matters for which this Court can take judicial notice).  Using the due dates from Select's invoices, Constellation calculates pre-judgment interest through the date of the Court's liability decision (November 14, 2006) as $786,740.95.

Constellation's pre-judgment figure is quite lower than Select's calculation of pre-judgment interest (through December 1, 2006) of $940,533.62.  Constellation points out that Select's calculation is flawed because it does not include rate adjustments keyed to the actual dates on which the prime rate changed but instead uses a single rate of interest each month, regardless of when the prime lending rate changed.   In the Court's view, Constellation's method for calculating interest is more consistent with the language of the agreement than Select's.  Calculation of interest under the Master Agreement is determined by the rate on "any [due] date," not any month.  Also, according to Constellation, Select double-counted some months.  *See* Pl.'s Mem. on Damages [doc. # 143] at 10-11.  Select has not denied Constellation's allegation of double-counting other than to state that Constellation had ample opportunity during the trial to dispute Select's calculations and did not do so.  Yet, if Select's interest exhibit does include double-counting, as Constellation points out, the fact that Constellation did not raise the issue until its brief on the proper calculation of interest is no reason to ignore Constellation's criticism of the exhibit.  Therefore, in the absence of any objection

from Select regarding Constellation's charge of double-counting, the Court credits Constellation's calculations and awards interest to the date of the Court's liability decision (November 14, 2006) as calculated by Constellation – namely, $786,740.95.  The total of congestion charges and pre-decision interest awarded Select is $ 3,165,275.56.

The parties also disagree about the award of interest in the period following the Court's liability decision.  Constellation argues that New York's statutory rate of 9%, s*ee* CPLR 5004, governs, while Select contends that the rate set forth in the parties' Master Agreement controls, particularly in view of section 8.4 of the Master Agreement, which states that the "express remedies and measures of damages provided in this Agreement satisfy the essential purposes hereof [and that for] breach of any provision for which an express remedy or measure of damages is provided, such express remedy or measure of damages shall be the sole and exclusive remedy . . . . and all other remedies or damages at law or in equity are waived."  PX 2, § 8.4.

Since section 4.2 of the Master Agreement provides for the calculation of interest "to, but excluding, the date of payment" (as opposed to judgment) and since section 8.4 states that any express remedy provided in the agreement controls over any other remedy provided "at law or in equity," the Court concludes that the interest provision of the parties' Master Agreement governs the calculation of interest "to, but excluding, the date of payment," regardless of when the judgment is rendered.  Therefore, interest shall continue to accrue in accordance with the Master Agreement on the amounts due Select from the due date to, but excluding, the date of Constellation's payment. According to Constellation, interest on the congestion charges accrues under the Master Agreement at $910.56 per day.  Therefore, interest will continue to accrue from November 14, 2006, until payment is made (but excluding the date of payment) at a rate of $910.56 per day.  *See* Pl.'s Mem.

on Damages [doc. # 143] at 14.

    **2.**    **Constellation's Post-SMD Award.**    The parties have stipulated that the Court's Post-SMD award to Constellation is 10% of the $40,361,746 that Select received from CL&P – namely, $4,036,174.60.  *See* Select Energy, Inc.'s Supp. Post-Trial Brief [doc. # 142] at 2.  However, Select argues that the amount of this award is subject to several downward adjustments.  The Court disagrees.

    Select argues that it is entitled to set-offs for a portion of the Auction Revenue Rights ("ARRs") and grossed-up losses that Constellation received as a consequence of supplying power to CL&P under the Letter Agreement.  *See* Decision [doc. # 137] at 50 n.19.  As Select puts it, since, as a result of the Court's decision, Constellation is not required to pay for all congestion charges and losses associated with the CL&P Load Asset, Constellation should not be entitled to retain all of the financial benefits of paying for congestion or accepting responsibility for losses in the Post-SMD Period.  Select seeks a set off of 44% of the $243,725.05 in ARRs and $401,037.94 in grossed-up losses that Constellation received.

    The Court finds that, on the basis of the parties' agreements and the evidence, Select is not entitled to the set-offs it seeks.  As the Court explained in its decision, ARRs are distributed by ISO New England to entities that pay congestion costs associated with supplying electricity to serve demand.  Decision [doc. # 137] at 10.  Select argues that, if Constellation receives a portion of the amounts Select received from CL&P in the FERC Proceeding, Constellation would receive a double recovery.  But that is not true.  Constellation has received only a single recovery from Select (which also received ARRs from ISO New England) in accordance with the terms of the Letter Agreement. The Letter Agreement itself says nothing about what, if anything, should be done with payments

from ISO New England when adjustments are made between Select and Constellation under their contract.   That is, the overpayment (if overpayment it is) came from ISO New England, not Select. Yet, the concept of set-off "allows parties that owe *mutual debts to each other* to assert the amounts owed, subtract one from the other, and pay only the balance." *PC Com, Inc. v. Protean, Inc.*, 906 F. Supp. 894, 903 (S.D.N.Y. 1995) (emphasis added).

Select presumably means by the phrase "double recovery" that equity and fairness require that Select receive a set-off for the ARRs Constellation received from ISO New England.[1]  However, Select cites no case law on point to support its position.  Constellation also points out that Select never identified the ARRs as the subject of its set-off claim in answers to contention interrogatories and never supplemented its interrogatory answers to include ARRs.  *See* Pl.'s Mem. on Damages [doc. # 143] at 5.[2]  *See, e.g., Wechsler v. Hunt Health Sys., Ltd.*, No. 94 Civ. 8294 (PKL), 1999 WL 672902, at *2 (S.D.N.Y. Aug. 27, 1999) (explaining that answers to contention interrogatories constitute judicial admissions that "generally estop the answering party from later seeking to assert positions omitted from, or otherwise at variance with, those responses"); *Guadagno v. Wallack Ader Levithan Assocs.*, 950 F. Supp. 1258, 1261 (S.D.N.Y. 1997) (same); 8A Wright & Miller, Federal

---

[1]  The Court notes with some irony that throughout this litigation, Select argued vigorously that Section 8.4 of the Master Agreement precluded the parties from seeking recovery under any equitable doctrine and limited parties to their "direct actual damages only"; that is, the parties were strictly limited to the contractual remedies and could not recover for anything other than the direct actual damages *they* had incurred.  Select has not explained how it has sustained direct actual damages by Constellation's retention of the ARRs received from ISO New England.

[2]  In its response to Constellation's proposed findings of fact and conclusions of law, submitted before trial, Select did state in summary fashion that it was entitled to a set-off for the ARRs.  *See* Defendant's Response to Plaintiff's Proposed Findings of Fact and Conclusions of Law and Defendant's Supplemental Proposed Findings of Fact and Conclusions of law [doc. # 103] Ex. C at 118 ¶ 75.

Practice & Procedure § 2181, at 346 ("The court in a proper case may limit the proof in the light of the answers to interrogatories . . . .").

As to the grossed-up losses, the Court agrees with Constellation that New York's voluntary payment doctrine "bars recovery of payments voluntarily made with full knowledge of the facts, and in the absence of fraud or mistake of material fact or law." *Dillon v. U-A Columbia Cablevision of Westchester, Inc.*, 100 N.Y.2d 525, 526 (2003); *see Newman v. RCN Telecom Servs., Inc.*, 238 F.R.D. 57, 78 (S.D.N.Y. 2006) (same); *Morales v. Copy Right, Inc.*, 813 N.Y.S.2d 731, 733 (App. Div. 2006) (same). Frank Sabatino of Select testified that Select knowingly paid the grossed-up losses, even though Select believed it was not required to do so:

> Q.     And why did you continue to pay [grossed-up losses] to Constellation?
>
> A.     I think the term I used with my own people is I didn't want to tickle the dragon. I thought Constellation was looking for excuses to walk from the deal and I just wanted to pay their invoices and not give them any excuse to walk.
>
> The Court.     Okay. So it wasn't an acknowledgment by you that they were entitled to those monies?
>
> The Witness.   No, I think in the post SMD world, they were not.

Pl.'s Mem. on Damages [doc. # 143] at 6 (citing Trial Transcript at 524: 16-24).

There was no mistake; there was no fraud; Select knowingly and voluntarily paid grossed-up losses for which it did not believe it was responsible in order to achieve other goals regarding the parties' relationship. Those facts fit New York's voluntary payments doctrine like a glove. Furthermore, as was the case with the ARRs, Constellation asserts (and Select does not dispute) that Select never identified the grossed-up losses as the subject of its set-off claim in response to Constellation's contention interrogatories.

Accordingly, Constellation is entitled to an award of $4,036,174.60 and interest of $816,440.70 to November 14, 2006 for a total of $4,852,615.30.  In accordance with the parties' agreement, interest will continue to accrue from November 14, 2006 at a rate of $1,395.96 per day until paid (excluding the date of payment).

### Expert Fees

Constellation also seeks an award of $21,949.01 under Rule 26(b)(4)(C) of the *Federal Rules of Civil Procedure* because Select served a number of document requests on Constellation's expert, John Reed, and deposed him for six hours.  In support of its request, Constellation points out that Rule 26(b)(4)(C) states that "[u]nless manifest  injustice will result . . . the court *shall* require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision . . . ."[3]  Select does not argue that requiring payment of Mr. Reed's fees would result in manifest injustice, nor does Select contest Mr. Reed's hourly rate or the hourly rates of his staff.  Rather, Select contends that Constellation's request is untimely and procedurally improper and that the amount requested is unreasonable.  *See* Def.'s Opposition to That Portion of Pl.'s Mem. on Damages Related to Expert Fees [doc. # 145]; Pl.'s Reply in Support of Request for Expert Fees [doc. # 146].

Constellation's request is both timely and procedurally proper.  Rule 26(b)(4)(C) does not provide a mechanism for seeking the fees authorized by the rule.  While the Court does not doubt that it has the discretion to deny a fee request as untimely, *see Ellis v. United Airlines, Inc.*, 73 F.3d 999, 1011 (10th Cir. 1996), the request in this case was submitted before judgment and at a time

---

[3] Mr. Reed was deposed in late March 2005.  Constellation made demand for payment under Rule 26(b)(4)(C) in June 2006. *See* Pl.'s Mem. on Damages [doc. # 143] Ex. L.

when the Court expected the parties to brief damages and any other remaining issues following the Court's liability decision.  *See* Fed. R. Civ. P. 26 advisory committee's notes ("The court may issue the . . . order [to pay fees] as a condition of discovery, or it may delay the order until after discovery is completed.").  Other courts have awarded expert fees after trial and even after judgment.  *See, e.g,* *Trepel v. Roadway Express, Inc.*, 266 F.3d 418, 427 (6th Cir. 2001); *Chambers v. Ingram*, 858 F.2d 351, 360-61 (7th Cir. 1988); *Lancaster v. Lord*, 90 Civ. 5843 (RLC), 1993 WL 97258, at *2 n.9 (S.D.N.Y. Mar. 31, 1993).

The amount requested by Constellation is more problematic.  As a leading treatise notes, "[t]he basic proposition [underlying Rule 26(b)(4)(C)] is relatively straightforward – a party that takes advantage of the opportunity afforded by Rule 26(b)(4)(A) to prepare a more forceful cross-examination should pay the expert's charges for submitting to this examination." 8 Wright & Miller, Federal Practice & Procedure § 2034, at 469; *see Goldwater v. Postmaster Gen.*, 136 F.R.D. 337, 339 (D. Conn. 1991) ("[T]he underlying purpose of Rule 26(b)(4)(C) is to compensate experts for their time spent participating in litigation and to prevent one party from unfairly obtaining the benefit of the opposing party's expert work free of cost.").  But, as the authors of the treatise also warn, "potential difficulties and unfairness lurk below the surface."   8 Wright & Miller, Federal Practice & Procedure § 2034, at 469.  The party seeking reimbursement bears the burden of establishing the reasonableness of the fees sought.  *See N.Y. v. Solvent Chem. Co., Inc.*, 210 F.R.D. 462, 468 (W.D.N.Y. 2002).

Select first objects to Mr. Reed's delegation of certain discovery tasks to his staff.  Since those staff members billed at lower rates than Mr. Reed himself, it is difficult to see how Select is injured by Mr. Reed's sensible delegation to lower-charging staff.  This Court should not discourage

12

experts from using lower-billing staff to perform discovery-related tasks that need not be performed by the higher-billing expert himself. *Cf. Fisher-Price, Inc. v. Safety 1st, Inc.*, 217 F.R.D. 329, 334 (D. Del. 2003). That, of course, does not mean that the hours spent by the staff members were reasonable in light of the discovery required. However, the Court finds it difficult from the materials presented to make that determination. The Court, therefore, urges the parties to confer and (hopefully) reach agreement on a reasonable sum for staff time. If, after conferring, the parties still cannot agree, they may submit the invoices and the discovery requests to the Court, and the Court will make that determination.

Select also objects to reimbursing Constellation for the time spent in preparing the expert for his deposition. Courts appear to be divided on whether Rule 26(b)(4)(C) permits a court to compensate a party for the time its expert spent in preparing for his deposition. *Compare M.T. McBrian, Inc. v. Liebert Corp.*, 173 F.R.D. 491, 493 (N.D. Ill. 1997) (Rule 26(b)(4)(C) "does not require the party deposing an expert witness to bear the expense of that expert's deposition preparation time . . . .") *with Lent v. Fashion Mall Partners, L.P.,* 223 F.R.D. 317, 318 (S.D.N.Y. 2004) ("Rule 26(b)(4)(C) clearly contemplates remuneration for time spent responding to discovery requests, which would include reasonable preparation for a deposition."). According to at least one court, "districts courts in the Second Circuit have consistently held that time spent by an expert preparing for a deposition is compensable under Rule 26(b)(4)(C)." *Solvent Chem. Co., Inc.*, 210 F.R.D. at 471 (citing numerous decisions). While there are good arguments on both sides of this issue, the text of the rule, which is not limited to the time spent in a deposition, but rather is more broadly-phrased to include "time responding to discovery," suggests that a court may allow recovery of deposition preparation costs.

13

That said, there is also great risk of abuse in compensating a party for his expert's deposition preparation time, since that time usually includes much of what ultimately is trial preparation work for the party retaining the expert.  As Wright & Miller suggest, "[T]he open-ended possibility that much ordinary trial preparation might be charged to the opponent by this device warrants caution." Wright & Miller, Federal Practice & Procedure § 2034, at 471.  Here, it appears that Constellation seeks reimbursement for a large amount of hours associated with preparation for Mr. Reed's six-hour deposition.  While the Court readily concedes that no magic formula exists to guide it, the Court's concern about reimbursing Constellation for what, in essence, would turn out to be ordinary trial preparation suggests that Constellation should not be reimbursed for more hours in preparation for the deposition than the deposition itself consumed – here, six hours. Therefore, the Court will permit Mr. Reed to be reimbursed for the time he spent in the deposition and for no more than six hours of his time in preparing for the deposition.  The Court will not order Select to pay for the staff time spent in preparing Mr. Reed for his deposition.

Finally, Constellation seeks recovery of $7,900, which it claims are the costs of copying Mr. Reed's file for Select.  However, Select responds that it paid a third-party provider $1,917.62 (14 cents per page) for a separate copy of the same documents.  The fee sought – $7,900 – strikes the Court as  excessive.  If Mr. Reed decided for his own reasons to copy the file in-house rather than send it out for copying, Select should not have to bear that expense.  Rule 26(b)(4)(C) is phrased in terms of a "reasonable" fee, not whatever the expert may choose to charge his client.  Therefore, the Court will not require Select to pay $7,900 for the copies sought by Select.  While the record is not clear on this issue, assuming that Mr. Reed could have obtained a copy of his file from a third-party provider for 14 cents per page (which seems reasonable to this Court), he should not receive more

than that in reimbursement. Once again, the Court will leave the parties to try to reach agreement on this issue, given the guidance the Court has given them.

### Conclusion

In sum, the Court GRANTS Select Energy, Inc.'s Motion for Reconsideration and/or Clarification [doc. # 138], as well as Plaintiff's Motion for Reconsideration [doc. # 139], but adheres to its original decision.   In addition, the Court grants Constellation's request to award expert fees under Rule 26(b)(4)(C) and directs the parties to confer about the appropriate reimbursement in light of the guidance provided above. The Court urges the parties to reach agreement on this issue, but if the parties cannot agree on an appropriate reimbursement amount, they may file simultaneous briefs and exhibits directed to this issue no later than **January 30, 2007.**

Having now considered the issue of damages, the Court directs the Clerk to enter Final Judgment as follows:

1.    Judgment shall enter in favor of Constellation and against Select on Counts I and IV of Constellation's Complaint [doc. # 1] in the following amounts: (a) $4,036,174.60; (b) interest of $816,440.70 to November 14, 2006; and (c) interest from and after November 14, 2006 until the amounts owed are paid (excluding the date of payment) at a rate of $1,395.96 per day.

2.    Judgment shall enter against Constellation and in favor of Select on Count II of Constellation's Complaint [doc. # 1].

3.    Counts III and V of Constellation's Complaint are dismissed as moot in view of the Court's rulings on Counts II and IV.

4.    Judgment shall enter in favor of Select and against Constellation on the First Count

of Select's Counterclaim [doc. # 12] in the following amounts: (a) $2,378,534.61; (b) interest of $786,740.95 to November 14, 2006; and (c) interest from and after November 14, 2006 until the amounts owed are paid (excluding the date of payment) at a rate of $910.56 per day.

Each party shall bear its own costs. **The Clerk is directed to close this file subject to reopening, if necessary, to address the issue of expert fees.**

IT IS SO ORDERED,


/s/ _____Mark R. Kravitz_____
United States District Judge


Dated at New Haven, Connecticut: **January 23, 2007.**